[Civ. No. 46644. First Dist., Div. Three. Aug. 27, 1979.]

MARK ALMA JONES, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Miller, Morton, Caillat & Nevis and Alan W. Tieger for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Nathan D. Mihara, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**FEINBERG, J.**—Petitioner seeks a writ of prohibition to restrain the respondent, the Superior Court of Santa Clara County, from proceeding to trial on two charges stated in the information. The information charges the petitioner and a codefendant, Billy Edward Ratliff, with possession of a sawed-off shotgun (Pen. Code, § 12020), attempted robbery (Pen. Code, §§ 664, 211), and attempted false imprisonment (Pen. Code, §§ 664, 236). Use of a firearm in connection with the latter two charges was also alleged (Pen. Code, § 12022.5). Petitioner filed a motion to set aside the information pursuant to Penal Code section 995 on the ground, inter alia, that the prosecution had failed to establish the corpus delicti of the crimes of attempted robbery and attempted false imprisonment. The motion was denied by the respondent, and the cause was set for trial. Petitioner then

filed a petition for a writ of prohibition in this court. We issued an alternative writ and stayed further proceedings in the superior court pending determination of this petition.

We have concluded that the prosecution has not sustained its burden of establishing the corpus delicti of the crimes, and therefore respondent is without jurisdiction to proceed to trial against petitioner on the charges of attempted robbery and attempted false imprisonment.

■ It is an elementary rule of law that before a defendant may be held to answer in the superior court, it must appear from the testimony at the preliminary examination that a public offense has been committed. (*Hall* v. *Superior Court* (1953) 120 Cal.App.2d 844, 847 [262 P.2d 351]; Pen. Code, § 872; *In re Schuber* (1945) 68 Cal.App.2d 424, 425 [156 P.2d 944].) ■ It is also elementary that a court has no jurisdiction to proceed with the trial of an offense without a valid indictment or information. (*Greenberg* v. *Superior Court* (1942) 19 Cal.2d 319, 321 [121 P.2d 713]; *Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 7 [291 P.2d 929].) ■ Prohibition is an appropriate method to test the right of the People to proceed with a prosecution when the validity of an indictment or information is challenged. (Pen. Code, §§ 995, 999a; *Greenberg, supra,* at p. 323; *Rogers, supra,* at p. 7; *Hall, supra,* at p. 850.)

■ The corpus delicti, the body or elements of the crime, must be established by the prosecution independently of and without considering the extrajudicial statements, confessions or admissions of the defendant. (*People* v. *Mehaffey* (1948) 32 Cal.2d 535, 544-545 [197 P.2d 12]; *People* v. *Ramirez* (1979) 91 Cal.App.3d 132, 137 [153 Cal.Rptr. 789].) The elements of the corpus delicti—(1) the injury or loss or harm, and (2) the criminal agency that has caused that injury, loss or harm—need only be proven by a reasonable probability or, in other words, by slight or prima facie proof. (*People* v. *Mehaffey, supra,* at p. 545; *People* v. *Ramirez, supra,* at p. 137.) The corpus delicti need not be proven by direct evidence; it may be established by circumstantial evidence and the inferences that may reasonably be drawn therefrom. (*People* v. *Ives* (1941) 17 Cal.2d 459, 463 [118 P.2d 408]; *Hall* v. *Superior Court, supra,* 120 Cal.App.2d at p. 849; *People* v. *Ditson* (1962) 57 Cal.2d 415, 445-446 [20 Cal.Rptr. 165, 369 P.2d 714].) The prosecution need not establish the accused as the perpetrator of the offense, for in California proof that the defendant was the person engaged in the criminal conduct is not an element of the corpus delicti. (*People* v. *Cullen* (1951) 37 Cal.2d 614, 624 [234 P.2d 1]; *People* v. *Ramirez, supra,* at p. 137.)

Applying these standards to the facts of this case, at the preliminary examination the prosecution had the burden of establishing by a reasonable probability that an attempted robbery and an attempted false imprisonment occurred.

■■ The People maintain that they have satisfied this requirement in two ways: (1) the evidence produced at the preliminary examination and the inferences that they suggest can be drawn from the evidence established the corpus delicti of the crimes; and (2) the extrajudicial statements of codefendant Ratliff established the corpus delicti of the crimes as to petitioner.

We conclude that neither of these contentions has merit.

At the preliminary examination, the following evidence was presented to the magistrate, excluding for the moment the extrajudicial statements of the defendants. At approximately 1:52 a.m. on November 30, 1978, Officer William Silva responded to a call about a shooting at a trailer park. At space 204 he found defendant Ratliff on the porch of the trailer with a gunshot wound in his arm. Ratliff told the officer that his friend was inside the trailer, and Silva entered it to find defendant Jones giving mouth-to-mouth resuscitation to Samuel Miller who was dead from a gunshot wound. Miller was wearing leather gloves, five shirts, and had surgical tape wrapped around his knuckles. Two large knives were found on his body.

Officer Aubrey Parrott entered the trailer later that same morning and noticed an overturned television set and stand, beer bottles and glasses on the floor, a cowboy hat with a bullet hole, two small caliber bullet holes in the living room ceiling, and a bullet hole in the kitchen cabinet. The officer also saw a bloody shirt and a trail of blood leading to the back of the trailer and he found evidence of narcotic paraphernalia in the living room, kitchen, and the rear bedroom.

The police later that same morning found an automatic pistol, cocked, with one round of ammunition in the chamber, under a bed in a separate bedroom from the one Miller was found in, and an operable sawed-off shotgun with a broken stock behind the couch in the living room. A bag containing folded women's clothing was found between the living room and the kitchen.

From this evidence the People suggest, *mirabile dictu,* that it is reasonable to draw the following inferences:

"Evidence from the record shows that one man was found dead. He had his hands taped like a boxer and had gloves on. The reasonable inference is that he was going to fight someone. Not only was he going to fight someone, but such preparation indicates he was going to pummel the person. In addition, the deceased had five shirts on, which would work well to soften blows to the deceased.

"Two weapons were found in the house. One was loaded and cocked which indicates it was ready for use. The other was a sawed-off shotgun behind the couch. Its broken stock would indicate that it was probably thrown to the place where it was laying.

"The reasonable inference to be drawn from the automatic pistol under the bed is that it was used to hold the proposed victim of the beating at gunpoint. The evidence is clear that it was not used to make the bullet holes in the ceiling of the mobile home or to shoot the deceased. The loud music playing was obviously to cover up sounds from the beating to be given by the deceased. The fact that no one present showed signs of having received a beating, and that the person to do the beating was dead, shows the proposed false imprisonment was attempted and failed.

"Equally clear is that the deceased intended on using both of his fists in beating the victim. This indeed would not allow him an opportunity to hold the two guns found. Therefore, two other people were necessary to assist him in carrying out his plan.

"The record also shows a sack of women's clothing was found in a strange place, the kitchen. No women had lived in the mobile home. The inference to be drawn is that the women's clothes were to be used in the proposed crime such as dressing the victim with them. To accomplish this, it would require taking the victim's clothes which would be robbery."[1]

█ We repeat the rule that the corpus delicti of the crime may be established by circumstantial evidence and the reasonable inferences that may be drawn therefrom. █ However, the word "reasonable" has never been defined to include the fantastic, which is, in effect, what the

---

[1]The intended victim, it appears from the extrajudicial statements of both defendants, was a fourth individual who was to be lured to the trailer.

People are suggesting that we do. In order for us to conclude that the evidence presented at the preliminary examination establishes by a reasonable probability that an attempted robbery and an attempted false imprisonment have occurred, we would need to stretch the realm of reason beyond its breaking point. It may be reasonable to draw the inference that the deceased was prepared to fight someone, but the procrustean reasoning indulged in by the People after that point is plainly absurd.

In *People* v. *Schuber, supra,* 71 Cal.App.2d 773, the defendant was accused of lascivious conduct upon his nine-year-old stepdaughter. The evidence showed that she had a lacerated vagina of recent origin and that she had been sleeping in the same bed as the defendant just before the injury occurred. The court concluded that the reasonable inference to be drawn from these facts was that the child had suffered a recent injury, and that the defendant had the opportunity to inflict such injury. Absent, however, was a showing that a criminal agency had caused the injury, or that the injury was received by unlawful means. (At p. 776.) The court concluded that there was no independent evidence that a public offense had been committed, and therefore affirmed the order dismissing the information.

It is noteworthy that in *Schuber, supra,* the evidence at the preliminary examination showed that there was an injury, but the court found no evidence that the injury was caused by a criminal act. In the facts before us, we find no competent evidence suggesting the existence of the crimes charged. We conclude that the evidence adduced at the preliminary examination, absent the extrajudicial statements of the defendants, was insufficient, as a matter of law, to establish the corpus delicti of the charges of attempted robbery or attempted false imprisonment.

■ The People's next contention is that the corpus delicti has been established by codefendant Ratliff's extrajudicial statements. It is a question of first impression in this state whether the prosecution may use the extrajudicial statements of a codefendant to establish the corpus delicti of the crime charged against the accused. The law is well settled that the corpus delicti must be proven independently of the extrajudicial statements of the *accused.* The issue is thus whether by implication the extrajudicial statements of the codefendant are not included within this rule. We conclude that the policy reasons underlying the corpus delicti rule are equally applicable to the case where the corpus delicti is sought

to be established by total reliance on the extrajudicial statements of a codefendant and thus we are compelled to reject the People's suggestion.

The corpus delicti rule was established by the courts to "protect a defendant from the possibility of fabricated testimony out of which might be wrongfully established both the crime and its perpetrator." (*People v. Vertrees* (1915) 169 Cal. 404, 409 [146 P. 890]; *People v. DeMartini* (1920) 50 Cal.App. 109, 113 [194 P. 506]; *People v. Cullen, supra,* 37 Cal.2d at p. 625; *People v. Quicke* (1969) 71 Cal.2d 502, 521 [78 Cal.Rptr. 683, 455 P.2d 787].) The corpus delicti rule arose from a judicial concern that false confessions would lead to unjust convictions. (*People v. Vertrees, supra,* at p. 409.) Today's judicial retention of the rule reflects the continued fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically. (See Note, *Developments in the Law: Confessions* (1966) 79 Harv.L.Rev. 935, 1073.)

To allow the extrajudicial statements of a codefendant to establish the corpus delicti would, in our opinion, circumvent this stated policy. The prohibition against the formation of the corpus delicti by the extrajudicial statements of the accused should not be bent to allow proof of the corpus delicti through the extrajudicial statements of a codefendant, for the latter is no more trustworthy than the former. The concern that a confession may be the result of improper police activities or the mental instability of the confessor is equally applicable to the confession of a codefendant as it is to the defendant. We see no reason to conclude that the codefendant's confession should be given a greater measure of reliability than we have heretofore given to the confession of the accused. Thus we hold that the corpus delicti of the crimes charged against the accused must be established independently of and without considering the extrajudicial statements of the accused *or a codefendant.*

There is a further and simple reason why the extrajudicial statement of Ratliff cannot be used to establish the corpus delicti. As to petitioner, Ratliff's statement was hearsay. At the preliminary examination, it was objected to as hearsay.[2] The magistrate properly ruled that Ratliff's extrajudicial statement was only admitted as against him. Thus, there is no Ratliff statement in evidence as against petitioner. Absent such evidence, there is nothing to indicate that there was an attempt at false imprisonment and robbery, much less a victim of such attempted crimes.

---

[2] Real party in its brief stated that no such objection was made but it now quite properly concedes that the objection was made.

We conclude that the prosecution has failed to establish the corpus delicti of the crimes of attempted robbery and attempted false imprisonment contained in the information, and therefore the respondent superior court is without jurisdiction to proceed upon these two charges. We need not therefore address the other issues raised in petitioner's brief.

Let the peremptory writ issue prohibiting respondent superior court from taking any further proceedings against petitioner on either the charge of attempted robbery or attempted false imprisonment contained in the information.

White, P. J., and Halvonik, J., concurred.