Filed 2/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MATTHEW JESSE MUNOZ,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | A157445<br><br>(Alameda County<br>Super. Ct. No. 17-CR-023663B) |

Petitioner Matthew Jesse Munoz was charged with conspiracy to commit murder based on statements he made that were captured on a police wiretap. (Pen. Code, §§ 182, 187.)[1] He argues the trial court should have granted his motion to set aside the information under section 995 because the corpus delicti rule prohibited consideration of a defendant's own statements absent the presentation of independent evidence regarding the elements of the crime. We disagree. The statements at issue here were part of the crime itself, and were not subject to the corpus delicti rule. (*People v. Carpenter* (1997) 15 Cal.4th 312 (*Carpenter*), overruled on other grounds in *People v. Diaz* (2015) 60 Cal.4th 1176, 1190–1191 (*Diaz*).)

---

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

1

# I.  BACKGROUND

A criminal complaint was filed charging petitioner and codefendants Humberto Villegas and Michael Porter with conspiracy to commit murder accompanied by an allegation that the conspiracy was committed for the benefit of a criminal street gang and that petitioner had suffered certain prior convictions.  (§§ 182, subd. (a)(1), 187, 186.22, subd. (b)(2), 1170.12.)  A preliminary hearing was held on March 8 and 9, 2018, at which time the following evidence was adduced:

In January, the Hayward Police Department was working on Operation Winter Storm, a criminal investigation of the East Las Palmas (ELP) street gang.  Petitioner and codefendant Villegas were ELP gang members and codefendant Porter was an associate of the gang.

Villegas was one of the targets of the investigation and a wiretap was set up on his phone.  On January 30, petitioner was in custody and told Villegas during a telephone call, "That nigga that Slug live with snitched on Chippa."[2]  "Chippa" referred to Porter, who was petitioner's cellmate; "Slug" was the rap name of Douglas Bagshaw.  There was a discussion of a person named "Big G" having put a price on Bagshaw's head.  There was also a conversation about Bagshaw having kicked over a candle at a memorial service, which upset Big G.

Later that day, Villegas had a conversation with Dezmon Wren, in which he told Wren that "Mickey" (petitioner) and "Chip Dollas" (Porter) wanted "[Bagshaw's] shit toasted" and "want[ed] him on the shirt" and wanted them "to handle it."  These were all references to killing Bagshaw.

---

[2]     An officer familiar with petitioner's voice through numerous contacts identified the voice on the tapes as belonging to petitioner.

Villegas received a text from petitioner on February 2 that said, "Tap in brother. That shit gonna start at 9 tonight. Let's make sure everything is on point." Petitioner and Villegas spoke later that day and petitioner told Villegas, "That nigga, next time he pops up, nigga gotta be on a R.I.P. T-shirt, nigga."

Bagshaw was scheduled to perform that night at the Fog Line Bar and Grill (the Fog Line) and went there wearing a yellow jersey. The police thought Bagshaw's life was in danger and had him notified of the threat. Police units went to the Fog Line and stationed themselves in a position of high visibility. Officers located a flier that was for a welcome home celebration for a man named Moochie and advertised, " 'Live Performances with Slug.' "

In a call placed at 7:15 p.m. on February 2, petitioner asked Villegas, who lived about a mile from the Fog Line, whether he was ready to go and Villegas said he was right down the street and "for sure" would show up. Petitioner told Villegas, "Nigga, I want you all niggas to air that motherfucker out nigga, straight up," which referred to shooting the place up. A text placed at 8:54 p.m. to Villegas's phone from petitioner's phone read, "Sup brother is that shit cracking or wat??" At 8:54 p.m., a message placed from Villegas's phone to petitioner's phone read, "Ima wiggle by rn," "rn" meaning "right now." At 8:55 p.m., a text from petitioner's phone to Villegas's read, "Aite Ima check out some shit see if anything posted or something." Villegas responded, "Ok" at 9:02 p.m.

At 9:28 p.m., a text from petitioner's phone to Villegas's read, "That shit cracking or what." Villegas responded, "Bootsie," at 9:28 p.m., meaning "stupid." At 9:29 p.m., Villegas sent a message to petitioner's phone that read, "There cops across the st." Also at 9:29 p.m., he sent a text to

3

petitioner's phone stating, "I'm looking for his whip (car). We steaking [sic] out rn." A message sent from petitioner's phone to Villegas's at 9:30 p.m. stated, "Niggas prolly tryna sho up a lil late to make an entrance they posted in ig [Instagram] to see who's going they gone fasho be up there." Villegas's phone sent a text at 9:30 p.m. stating, "Yee, I'm posted here smoking down the way." At 9:31 p.m., Villegas's phone sent a text that said, "Lookn for yellow boy." A text from petitioner's phone said "Ganggang." The next morning at 7:31 a.m., a text placed from petitioner's phone to Villegas's asked, "Nun happen??"

No shooting occurred at the Fog Line on February 2. One of the officers on surveillance at the bar saw a Hyundai Sonata associated with Villegas drive by at about 20 miles per hour at 9:08 p.m. The car was registered to Villegas's mother, and Villegas also had a Jeep Cherokee.

Based on this testimony, the magistrate held petitioner and his codefendants to answer on the charges.[3] Petitioner filed a motion to set aside the information under section 995, alleging (1) the evidence of petitioner's identity was insufficient; (2) the evidence was insufficient to support the gang enhancement; (3) the phone calls and text messages were not properly authenticated; and (4) the People did not satisfy the corpus delicti rule because they relied on the defendants' extrajudicial statements to establish conspiracy. On May 28, 2019, following a hearing on the motion, it was denied. Petitioner filed a petition for writ of mandate and/or prohibition in this Court on the same grounds as the section 995 motion, which we summarily denied on July 29, 2019. Petitioner timely filed a petition for review.

---

[3] Because Porter is not a party to this writ proceeding, and because most of the communications were between petitioner and Villegas, we focus on the communications between petitioner and Villegas.

4

On October 16, 2019, the Supreme Court granted the petition for review and transferred the case to this Court, "with directions to vacate its order denying the petition for writ of mandate/prohibition and to issue an order to show cause directing respondent court to show cause why relief should not be granted based on petitioner's claim that the evidence at the preliminary hearing was insufficient to satisfy the corpus delicti rule." (*Munoz v. Superior Court*, review granted Oct. 16, 2019, S257363.) We have complied with this directive and have received and considered the People's return and petitioner's reply to the return.[4]

## II. DISCUSSION

### A. *Standard of Review*

"The function of the magistrate at a preliminary hearing is to determine whether there is 'sufficient cause' to believe defendant is guilty of the charged offense. (§§ 871, 872, subd. (a).)" (*People v. Ramirez* (2016) 244 Cal.App.4th 800, 813.) "Sufficient cause" equates to " 'reasonable and probable cause.' " (*Ibid*.) " 'Evidence that will justify a prosecution need not be sufficient to support a conviction. [Citations.] " 'Probable cause is shown if a [person] of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' " An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' " (*People v. Garcia* (1985) 166

---

[4] We have also procured the flash drive containing the phone calls and text messages captured on the wiretap and the transcripts of those conversations, which were introduced as People's Exhibits 1 and 1-A at the preliminary hearing. The flash drive and transcripts were not provided with the original writ petition, even though it was petitioner's burden to furnish an adequate record. (*Sherwood v. Superior Court* (1979) 24 Cal.3d 183, 186–187; Cal. Rules of Court, rule 8.486(b)(1).)

5

Cal.App.3d 1056, 1065.) "This is an 'exceedingly low' standard . . . . " (*People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 245.)

When reviewing the denial of a section 995 motion, we disregard the ruling of the superior court and directly review the decision of the magistrate holding the defendant to answer. (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1071–1072.) Our review is de novo insofar as the ruling rests on issues of statutory interpretation; to the extent it rests on a consideration of the evidence adduced, we draw all inferences in favor of the information. (*Id*. at p. 1072.)

B. *Corpus Delicti Rule*

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169 (*Alvarez*); accord, *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1127 (*Gutierrez*).) Nor can the corpus delicti be established by the extrajudicial statements of a codefendant. (*Jones v. Superior Court* (1979) 96 Cal.App.3d 390, 397 (*Jones*); see *People v. Powers-Monachello* (2010) 189 Cal.App.4th 400, 407,410, (*Powers*).)

The corpus delicti rule "is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened." (*Alvarez*, *supra*, 27 Cal.4th at p. 1169; *People v. Ochoa* (1998) 19 Cal.4th 353, 450.) In addition to protecting against the possibility that a defendant will be convicted of a crime not actually committed, it reduces the chance of a false confession to an actual crime. (*United States v. Niebla-*

*Torres* (9th Cir. 2017) 847 F.3d 1049, 1055; see also *Jones*, *supra*, 96 Cal.App.3d at p. 397.) "Today's judicial retention of the rule reflects the continued fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically." (*Jones* at p. 397.)

"[T]he quantum of evidence the People must produce in order to satisfy the corpus delicti rule is quite modest; case law describes it as a 'slight or prima facie' showing." (*People v. Jennings* (1991) 53 Cal.3d 334, 368; accord, *Gutierrez*, *supra*, 28 Cal.4th at p. 1128.) "The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.] There is no requirement of independent evidence 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.] In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues." (*Alvarez*, *supra*, 27 Cal.4th at p. 1171; accord, *People v. Ledesma* (2006) 39 Cal.4th 641, 722.

The corpus delicti rule applies to preliminary hearings. (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1195, 1200–1202 (*Herrera*); *Rayyis v. Superior Court* (2005) 133 Cal.App.4th 138, 145–150.) "In the preliminary hearing context, it has long been held that '[a] defendant cannot be held to answer unless the corpus delicti of the offenses with which he is charged is established independently of his extrajudicial statements.'" (*Powers*, *supra*, 189 Cal.App.4th at p. 406, citing *People v. Martinez* (1972) 27 Cal.App.3d 131, 133.)

7

C. *Criminal Conspiracy*

A conspiracy conviction requires proof that the defendant and one or more other persons had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, and proof of the commission of an overt act by one or more of the parties to the agreement in furtherance of the conspiracy. (*People v. Smith* (2014) 60 Cal.4th 603, 616; *People v. Homick* (2012) 55 Cal.4th 816, 870; *People v. Russo* (2001) 25 Cal.4th 1124, 1131.) " ' "The punishable act, or the very crux, of a criminal conspiracy is the evil or corrupt agreement." ' " (*Homick*, at p. 870.)

It is frequently necessary to infer the existence of a conspiracy through circumstantial evidence of " ' "the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy" ' " (*People v. Thompson* (2016) 1 Cal.5th 1043, 1111 (*Thompson*); accord, *Powers, supra,* 189 Cal.App.4th at pp. 418–419.) The statements of co-conspirators made during the conspiracy are admissible under Evidence Code section 1223, if not admissible under other hearsay exceptions. (See *People v. Herrera* (2000) 83 Cal.App.4th 46, 59; *Thompson*, at p. 1111.

D. *Application of Corpus Delicti Rule to Conspiracy Charge*

The corpus delicti of conspiracy is evidence sufficient to infer an agreement to commit a crime and an overt act in furtherance of the agreement. (*People v. Muniz* (1993) 16 Cal.App.4th 1083, 1087 (*Muniz*).) In this case, the magistrate could readily infer from the conversations intercepted by the wiretap that appellant and Villegas had agreed to kill Bagshaw and had the intent to commit a murder. Evidence was also presented at the preliminary hearing that would have permitted a reasonable

magistrate to determine that Villegas, a co-conspirator, committed an overt act by driving by the Fog Line on February 2.

Petitioner claims the statements captured on the wiretap should not be considered in assessing the sufficiency of the evidence of corpus delicti. Petitioner would frame the issue before us as whether the corpus delicti rule applies to conspiracy cases. The real question is not whether the corpus delicti rule applies to conspiracy—it does. (See *Powers*, *supra*, 189 Cal.App.4th at pp. 403–404; *Herrera*, *supra*, 136 Cal.App.4th at p. 1206.) We ask instead whether there is an exception to the corpus delicti rule that allows extrajudicial statements to be introduced to prove the corpus delicti when they constitute part of the charged offense—which in this case, happens to be a conspiracy.

We agree that if we excluded the statements from the wiretap, there would be no evidence of an agreement between appellant and Villegas. We also agree that statements on the tapes lend support to the conclusion that it was Villegas who drove by the Fog Line, and thus committed an overt act. If the statements captured by the wiretap were excluded, there would be insufficient proof of the corpus delicti in this case. But the extrajudicial statements by appellant and Villegas were part of the crime itself and the magistrate was entitled to consider those statements in determining whether the corpus delicti was established.

Our Supreme Court has held the corpus delicti rule generally does not apply to extrajudicial statements made by the defendant that are part of the crime itself. In *Carpenter*, *supra*, 15 Cal.4th 312, the defendant came upon a couple hiking in a remote area. (*Id*. at p. 345.) He held them at gunpoint, told them to do what he said, and told the woman he wanted to rape her. (*Ibid*.) He subsequently shot both of them and was convicted of the murder

9

and attempted rape of the woman and the attempted murder of the man. (*Id.* at p. 344.) In finding the trial court had properly refused to give a corpus delicti instruction, the Court explained, "We have extended the corpus delicti rule to preoffense statements of later intent as well as to postoffense admissions and confessions [citation], but not to a statement that is part of the crime itself. [Citation.] *A statement to the victim of current intent can itself supply the corpus delicti.* Unlike the cautionary instruction [regarding evidence of a defendant's out-of-court oral statements], the corpus delicti rule is designed to provide independent evidence that the crime occurred, not to help determine whether the statement was made.[5] Its principle reason is to ensure 'that the accused is not admitting to a crime that never occurred.' [Citations.] *Defendant's statement to [the victim] of present intent was part of the crime; it could not be a confession to a crime that never occurred. That statement of intent did not have to be independently proved.*" (*Id.* at p. 394, italics added.)

In *People v. Chan* (2005) 128 Cal.App.4th 408, the court followed *Carpenter* in finding the corpus delicti rule "has no application when the defendant's extrajudicial statements constitute the crime" and "does not extend to statements made during the commission of the charged crime." (*Id.* at p. 420.) In *Chan*, the defendant was convicted of failing to register as a sex

---

[5]    A statement made by the defendant during the crime itself *is* subject to the rule that the defendant is entitled at trial to a cautionary instruction to determine whether the statement was made. (See *Diaz*, *supra*, 60 Cal.4th at pp. 1185–1187.) *Carpenter* recognized as much, although that opinion was later overruled by *Diaz* to the extent *Carpenter* found a sua sponte duty to give the cautionary instruction, rather than a duty to give such an instruction only on request. (*Id.* at pp. 1190–1191; *Carpenter*, *supra*, 15 Cal.4th 392–393.) *Carpenter* distinguished the cautionary instruction requirement regarding whether an admission had been made from the corpus delicti rule. (*Carpenter* at p. 392.)

offender because he had provided false addresses when registering. (*Id.* at pp. 413, 414–415.) "The extrajudicial statements at issue . . . [were] defendant's own false written entries on . . . convicted sex offender registration forms; i.e., the crime itself." (*Id.* at pp. 420–421.) A similar analysis was used in *In re I.M.* (2005) 125 Cal.App.4th 1195, in which the court found the defendant's misleading statement to the police was intended to aid the principal to the crime and thus was part of the charged crime of being an accessory after the fact of murder: "It is true that the evidence of defendant's attempt to mislead police is in the form of a statement made by him to the investigating officers. Defendant's statement, however, was not a description of the corpus delicti. As an attempt to mislead, the statement itself was a part of the corpus delicti. *Statements that, although extrajudicial, are themselves a part of the conduct of the crime, are not subject to the corpus delicti rule.* [Citation.] Defendant's attempt to mislead police, therefore, can be used to establish the corpus delicti of his crime." (*Id.* at pp. 1203–1204, italics added.)[6]

Applying *Carpenter* and its progeny to the facts before us, the recorded conversations between petitioner and Villegas, and the statements made by each of them during those conversations, constituted part of the criminal agreement central to the charge of conspiracy. As such, those statements were not barred by the corpus delicti rule. Those statements were themselves part of the crime itself and could be relied upon in evaluating

---

[6]    This is consistent with the corpus delicti rule as applied by the federal courts. Although post-offense extrajudicial statements about the offense by the accused are inadmissible to prove corpus delicti without corroborating evidence (*Smith v. United States* (1954) 348 U.S. 147, 154), an exception exists when the statements were made " 'prior to the crime,' or themselves constitute the offense or an essential element thereof" (*United States v. Schneiderman* (S.D. Cal. 1952) 106 F. Supp. 892, 901).

11

whether there was an agreement to murder Bagshaw. The purposes underlying the corpus delicti rule—deterring confessions to a crime that had not actually occurred and deterring false confessions to an actual crime—are not offended by treating statements in a conspiracy case *that are actually part of the crime* as part of the corpus delicti.

Appellant suggests we should not follow *Carpenter*'s interpretation of the corpus delicti rule, characterizing its analysis as "terse." Although the opinion's analysis of the issue is concise, "it is the content and not the brevity of the discussion that is important." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1124.) Under the doctrine of stare decisis, we are bound to follow the high court's decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We note that the Supreme Court cited *Carpenter* in its later decision in *Alvarez, supra*, 27 Cal.4th at page 1172, fn. 9, and stated that the prosecution had failed to renew its argument, rejected by the Court of Appeal, that statements of sexual intent made months before the attack that was a basis for the conviction were part of the crime itself within the meaning of *Carpenter*.

The court's opinion in *Herrera, supra*, 136 Cal.App.4th 1191, cited by petitioner, illustrates the difference between extrajudicial statements that are part of the crime itself in a conspiracy case and those that are not—and how each type of statement is treated differently under the corpus delicti rule. In *Herrera*, the prosecution submitted evidence at the preliminary hearing that the defendant had committed certain offenses, but the only evidence of a charged conspiracy was his confession to a detective that he had shoplifted certain pills to sell to an individual named Borazo. (*Id.*, at pp. 1195–1196, 1204–1206.) "Absent Herrera's own statements, there is a total absence of evidence demonstrating the existence of a conspiracy to

12

manufacture methamphetamine." (*Id.* at p. 1206.) Significantly, the statements at issue were made during a police interview after the fact. (*Id.* at p. 1196.) They were not a part of the alleged conspiracy itself. (*Ibid.*)

Nothing in *Powers*, *supra*, 189 Cal.App.4th 400, also cited by petitioner, suggests that statements which are themselves part of a charged conspiracy cannot be considered absent independent evidence of the corpus delicti. In that case, defendants were charged at the preliminary hearing with possession of cocaine for sale and conspiracy to possess cocaine for sale. (*Id.* at p. 403.) The court upheld the lower court's dismissal of conspiracy charges based on the corpus delicti rule, finding there was insufficient evidence of an agreement apart from the defendants' statements. (*Id.* at p. 405.) The nature of the statements was not at issue, the primary question being whether the corpus delicti rule continued to apply to preliminary hearings after the passage of the "Right to Truth-in-Evidence" amendments to the state constitution in 1982 (Cal. Const., art. I, § 28), and whether the evidence apart from extrajudicial statements by the defendants was sufficient to hold the defendants to answer on the conspiracy charges. (*Powers, supra,* 189 Cal.app.4th at pp. 406–419.) The opinion notes the prosecution relied on "defendants' 'statements about the operational intricacies of [defendants'] drug distribution enterprise,' " but does not indicate whether these statements were made to police after the alleged crimes had been completed. (*Id.* at p. 410.) At one point the opinion describes a law enforcement expert's testimony that one defendant "*at his own admission* in an interview with me, was selling cocaine," suggesting at least one of the extrajudicial statements was a confession to the police after the fact rather than an operative statement to the alleged co-conspirators constituting the conspiracy agreement itself. (*Id.* at p. 419.)

13

Petitioner also cites *Muniz*, *supra*, 16 Cal.App.4th 1083, in which a gang member confessed to police that he and some fellow gang members had been on their way to commit a drive-by shooting in a rival gang's territory when they were arrested. (*Id.* at p. 1086.) Acknowledging that the corpus delicti of the crime of conspiracy to commit an assault with a firearm could only be proved by evidence independent of this confession, the court found that requirement satisfied by an officer's description of the circumstances of the arrest and a gang expert's testimony. (*Id.* at p. 1088.) *Muniz* does not concern statements actually constituting the agreement underlying the conspiracy, as opposed to evidence of a confession to police after the fact.

The statements now challenged were part of the alleged conspiracy itself, and were not extrajudicial statements subject to exclusion under the corpus delicti rule. Certainly, petitioner remains free to argue to a jury that the statements were not, in substance, a criminal agreement, or that the People did not prove beyond a reasonable doubt that an overt act was committed. But there is no danger here that if the corpus delicti rule is not applied to statements captured in the wiretap, petitioner will be convicted of a crime that never occurred or one that occurred but was actually committed by someone else. (*Jones*, *supra*, 96 Cal.App.3d at p. 397.)[7] If the primary purpose of the corpus delicti rule is to ensure that a crime was actually committed, what better proof could there be of a criminal conspiracy than the words of the alleged conspirators actually constituting the agreement itself? (See *People v. Fratianno* (1955) 132 Cal.App.2d 610, 628–629.)

---

[7] One of the grounds for petitioner's section 995 motion and the writ petition taken from the denial of that motion was insufficient evidence linking him to the phone calls and texts. Proof of the corpus delicti does not require identity of the perpetrator of the crime and it is not necessary for this purpose to connect the defendant with the commission of the crime. (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1428.)

14

The petition for writ of mandate or prohibition is denied.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.

(A157445)

Alameda County Superior Court, No. 17-CR-023663B, Jon Rolefson, Judge

Bay Area Criminal Law, David J. Cohen and Alexander P. Guilmartin for Petitioner.

Nancy E. O'Malley, District Attorney, Alex Hernandez, Deputy District Attorney for Respondent.

Xavier Becerra, Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Seth K. Schalit, Supervising Deputy Attorney General, Lisa Ashley Ott, Deputy Attorney General for Real Party in Interest.