Filed 9/9/21  P. v. Burton CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA BURTON,<br><br>    Defendant and Appellant. | F079341<br><br>(Super. Ct. No. MCR060773)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Madera County.  Joseph A. Soldani, Judge.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Harry Joseph Colombo and A. Kay Lauterbach, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Joshua Burton was convicted by jury trial of attempt to escape from state prison. On appeal, he contends there was insufficient evidence to satisfy the corpus delicti of the crime. We affirm.

## PROCEDURAL SUMMARY

On June 4, 2018, the Madera County District Attorney filed a complaint charging defendant with attempt to escape from a state prison (Pen. Code, § 4530, subd. (b);[1] count 1). The complaint further alleged defendant had suffered a prior strike conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

On April 3, 2019, a jury found defendant guilty of attempt to escape and the court found defendant's prior strike true.

On May 8, 2019, the trial court sentenced defendant to the upper term of six years to be served consecutively to sentences in two other cases.

On May 17, 2019, defendant filed a notice of appeal.

## FACTUAL SUMMARY

Defendant was an inmate at Valley State Prison. On November 22, 2017, numerous inmates alerted Correctional Officer Hector Castillo that an inmate was "down" on the west side of the building. Castillo and two other officers went over to the area and discovered defendant lying face down on the ground in an out-of-bounds area, approximately three to five feet away from a cinder block wall. The area was marked by a yellow line with the words "OUT OF BOUNDS" painted in red. Defendant was approximately 40 to 50 feet into the out-of-bounds area, in the direction of the cinder block wall. The cinder block wall separated A-yard from B-yard. Inmates were not allowed to travel between yards without permission.

---

[1] All further statutory references are to the Penal Code.

2.

One of the officers conducted a clothed body search of defendant to "[make] sure he had nothing on him." Afterwards, defendant was instructed to stand up and was then handcuffed. When the officers asked defendant what he was doing there, he responded that he "tripped and fell." As the officers proceeded to escort him to the program area office, defendant took a few steps and then stated he could not walk. The officers helped him into a wheelchair and took him into the office.

Officer Robert Vasquez, one of the other responding officers, testified that the cinder block wall that defendant was near was approximately 15 feet tall with an additional five feet of chain link fence at the top, which was lined with razor wire on top. Vasquez stated that the razor wire was sharp enough to "rip your skin." He said inmates could possibly use a shirt or jacket to cover the razor wire to go over it. He could not recall whether defendant had a jacket on when he found him in the out-of-bounds area. Vasquez said he would have noted in his report whether defendant had a jacket or an extra article of clothing to aid in an escape; however, his report had no such notation. Moreover, Castillo testified that he did not see defendant try to climb any fences.

Correctional Sergeant Pedro Juarez testified that when defendant went into the building later that same day, Juarez asked defendant what was wrong with his foot. Defendant told Juarez he had hurt it in front of the program office. Juarez "took a quick glance" at defendant's right foot but did not see anything wrong with it. However, a few hours later, Juarez checked on defendant again and noticed that defendant's foot was swollen and discolored. Thereafter, Juarez requested a medical evaluation for defendant. By the time the medical evaluation was conducted, defendant's right ankle was bruised, swollen, and discolored.

Psychologist Jacqueline Schneiderman conducted a mental health interview of defendant on the day of the incident and recommended that he be placed in a crisis bed because he had been making bizarre statements. She said he was suffering from delusions, but he did not seem "overly psychotic." He appeared "very calm" and was

3.

able to answer questions clearly.  He did not exhibit signs of auditory or visual hallucinations, but he appeared to be in an alternate reality.  When she asked him how he hurt his foot, he said he tripped and fell.

***Defendant's Extrajudicial Admissions***

On December 5, 2017, registered nurse Po Thao conducted a medical evaluation of defendant.  Defendant had a soft cast around his right ankle.  Defendant told her that he "fell off a fence."

On December 6, 2017, Captain Scott Speidell conducted defendant's administrative review hearing.  When Speidell asked defendant about his cast, defendant told Speidell that he was climbing the fence by the program office and when he became afraid, he began climbing down and fell.  Speidell asked defendant why he was climbing the fence and defendant stated that he was leaving the institution.  He said that they had kept him too long and that he did not belong there.

## DISCUSSION

Defendant contends there was insufficient evidence to prove the corpus delicti of an attempt to escape because, aside from his extrajudicial statements, there was no evidence that a crime had occurred.  We disagree.

I.      **Applicable Legal Principles**

A.      ***The Corpus Delicti Rule***

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause."  (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168 (*Alvarez*).)  "In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant."  (*Id*. at pp. 1168–1169.)  "This rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened."  (*Id*. at p. 1169.)

4.

"The amount of independent proof of a crime required [to satisfy the corpus delicti rule] is quite small; we have described this quantum of evidence as 'slight ….' " (*People v. Jones* (1998) 17 Cal.4th 279, 301.)  Such "independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible." (*Alvarez*, *supra*, 27 Cal.4th at p. 1171.)  "In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues." (*Ibid*.)

### B.      Attempt to Escape

"Every prisoner … who escapes or attempts to escape … not by force or violence, is punishable by imprisonment in the state prison for 16 months, two years, or three years, to be served consecutively …." (§ 4532, subd. (b)(1).)  "Attempted escape requires a 'direct, unequivocal act to effect that purpose.' " (*People v. Lancaster* (2007) 41 Cal.4th 50, 94.)  "Such an act 'must go beyond mere preparation, and it must show that the perpetrator is putting his or her plan into action.' " (*Ibid*.)  Additionally, "attempt to escape requires a specific intent to escape." (*People v. Bailey* (2012) 54 Cal.4th 740, 749.)  "*Escape* means the unlawful departure of a prisoner from the physical limits of his or her custody.  [It is not necessary for the prisoner to have left the outer limits of the institution's property.  However, the prisoner must breach a wall or fence marking the security perimeter of the correctional facility.  It is not sufficient for the prisoner to be merely outside the particular area within the facility where he or she is permitted to be.]" (CALCRIM No. 2760.)  For the purpose of the corpus delicti rule, "[t]here is no requirement of independent evidence 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency." (*Alvarez*, *supra*, 27 Cal.4th at p. 1171.)

## II.     Background

The jury was instructed pursuant to CALCRIM No. 359 as follows:

> "The defendant may not be convicted of any crime based on his out-of-court statement alone.  You may rely on the defendant's out-of-court statement to convict him only if you first conclude that other evidence shows that the charged crime was committed.  That other evidence may be slight and may not only be enough to support a reasonable inference that a crime was committed."

Additionally, the court instructed on attempt pursuant to CALCRIM No. 460 as follows:

> "The defendant is charged with escape.  To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant took a direct but ineffective step towards committing escape.  And, two, the defendant intended to commit escape.

> "A direct step requires more than mere—merely planning or preparing to commit escape, or obtaining or arranging for something needed to commit escape.

> "A direct step is one that goes beyond planning or preparation, and shows that a person is putting his or her plan into action.  A direct step indicates a definite and unambiguous intent to commit escape.  It is a direct movement towards the commission of the crime after preparations are made.  It is an immediate step that puts the plan into motion so that the plan would have been completed if some circumstance outside the plan and had not interrupted the attempt.

> "A person who attempts to commit escape is guilty of escape even after taking a direct step towards committing the crime he or she abandoned further efforts to complete the crime.  Or if his or her attempt failed or was interrupted by something, by someone or something beyond his or her control.  On the other hand, if a person freely and voluntarily abandons his or her plans before taking a direct step toward committing escape, then the person is not guilty of escape.

> "To decide whether the defendant intended to commit escape, please refer to the separate instructions that I will give you on that crime."

### III. Analysis

In this case, the evidence established that defendant was outside of his permitted area of confinement. Officers Castillo and Vasquez both testified they saw defendant in the out-of-bounds area. The area was marked by a yellow line with red letters that read "OUT OF BOUNDS." Defendant was approximately three to five feet away from the cinder block wall, and approximately 40 to 50 feet away from the out-of-bounds line. This evidence certainly permits a reasonable inference that the reason defendant was so far into the out-of-bounds area, was because he was attempting to reach the wall to effectuate an escape. It does not matter if it is plausible that defendant was there due to other circumstances, such as tripping and falling into the area, as he asserts. (See *Alvarez*, *supra*, 27 Cal.4th at p. 1171 [the independent proof is "sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible"].) Additionally, defendant could not walk out of the out-of-bounds area and had to be rolled out in a wheelchair. The fact that he could not walk on his own also suggests he may have been climbing down the wall and injured himself in a fall.

Defendant argues the present case is analogous to *People v. Schuber* (1945) 71 Cal.App. 2d 773. We disagree. In *Schuber*, the defendant was charged with lascivious conduct upon his nine-year-old stepdaughter after she suffered from a laceration to her vagina. (*Id*. at p. 774.) The evidence established that just before the injury occurred, she had been sleeping in the same bed as the defendant. (*Id*. at p. 776.) However, there was absolutely no evidence in the record pertaining to the cause of her injury—the victim testified "she 'did not know' what, if anything, her stepfather did to her." (*Id*. at p. 774.) The court stated that there were "no circumstances shown by the record, or reasonable inferences to be drawn therefrom," apart from defendant's extrajudicial statements, that a crime had occurred. (*Id*. at p. 775.) Accordingly, the court held that there was insufficient evidence to prove the corpus delicti of the charged crime because there was no independent evidence that a criminal agency caused the

victim's injury. (*Id*. at p. 774.) Here, on the other hand, there was independent evidence from which to infer that defendant attempted to escape—two officers testified they found defendant in an out-of-bounds area near a cinder block wall.

Defendant further asserts that this case is also similar to *Jones v. Superior Court* (1979) 96 Cal.App.3d 390, 396 (*Jones*), in which the court concluded that the evidence adduced at the preliminary examination was not competent to establish the corpus delicti of the charged crimes. Again, we disagree.

In *Jones*, the defendant was charged with the possession of a sawed-off shotgun, attempted robbery, and attempted false imprisonment. (*Jones*, *supra*, 96 Cal.App.3d at p. 392.) On appeal, defendant argued that the prosecution had failed to establish the corpus delicti of the attempted robbery and attempted false imprisonment charges. (*Ibid*.) At the preliminary examination, evidence established that an officer responded to a shooting in a home. (*Id*. at p. 394.) When the officer entered the home, he discovered defendant giving mouth-to-mouth resuscitation to a deceased individual, who had died due to a gunshot wound. The deceased was wearing gloves with tape wrapped around his knuckles, had five shirts on, and had two knives on him. There were bullet holes and items in disarray throughout the home. There was also a bloody shirt, a trail of blood, and a bag of women's clothing nearby. Officers also found a pistol and a sawed-off shotgun. (*Ibid*.) As a result, the prosecution argued that it was reasonable to infer that the deceased, the defendant, and another individual had planned to rob and falsely imprison the victim. (*Id*. at p. 395.) The prosecution suggested the deceased had gloves, tape around his knuckles, and five shirts on because he intended to beat the victim. The prosecutor argued, " '[t]he fact that no one present showed signs of having received a beating, and that the person to do the beating was dead, shows the proposed false imprisonment was attempted and failed.' " (*Ibid*.) He further argued that, because police discovered two guns, two other people were necessary to assist the deceased in carrying out the plan—the defendant being one of those individuals. Additionally, because no

8.

woman lived in the home, the prosecutor further argued that " '[t]he inference to be drawn is that the women's clothes were to be used in the proposed crime such as dressing the victim with them. To accomplish this, it would require taking the victim's clothes which would be robbery.' " (*Ibid*.) The court stated that these inferences were *not* reasonable and that in order to "conclude that the evidence presented at the preliminary examination establishe[d] by a reasonable probability that an attempted robbery and an attempted false imprisonment … occurred, [it] would need to stretch the realm of reason beyond its breaking point." (*Id*. at p. 396.) Thus, the court concluded that, absent defendant's extrajudicial statements, there was insufficient evidence to establish the corpus delicti of attempted robbery and attempted false imprisonment. (*Ibid*.) There, the evidence simply did not support the prosecutor's unreasonable inferences. For instance, it was not reasonable to infer that the defendant had attempted a robbery from the fact that a bag of women's clothing was found in the home. (*Id*. at p. 395.) Here, however, the fact that defendant was found in an out-of-bounds area does permit a reasonable inference that he attempted an escape. (See *People v. Jones*, *supra*, 17 Cal.4th at pp. 301–302 ["[t]he inference need not be 'the only, or even the most compelling, one … [but need only be] a *reasonable* one' "].)

Thus, we conclude the prosecution satisfied its minimal burden by introducing evidence from which a reasonable inference could be drawn that defendant had attempted to escape the prison.

## **DISPOSITION**

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

DETJEN, J.

FRANSON, J.

10.