Filed 5/4/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re I.A., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B296549 (Super. Ct. No. FJ53512) (Los Angeles County) |
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>I.A.,<br><br>　　Defendant and Appellant. | |

　　　　　If a juvenile court finds true an allegation that a minor committed murder based on the natural and probable consequences theory, the minor may petition the court to vacate its finding and the corresponding disposition pursuant to Penal Code[1] section 1170.95.  (*In re R.G.* (2019) 35 Cal.App.5th 141, 151.)  If the court grants the petition, and the original charging document included only a generic murder allegation without

---

　　　　　[1] All further unlabeled statutory references are to the Penal Code.

alleging the target offense, the now-vacated finding on the murder allegation "shall be redesignated" as a finding on the target offense.  (§ 1170.95, subd. (e).)

The issue presented in this appeal is whether the minor may challenge the sufficiency of the evidence supporting the redesignated target offense.  We hold that where a juvenile court vacates its true finding on a generic murder allegation and redesignates it as a finding on an uncharged target offense, and does so before a minor has had the opportunity to contest the court's findings or orders, the minor may challenge the sufficiency of the evidence of the redesignated offense on appeal.

I.A. appeals from the juvenile court's order declaring him a ward of the court after it sustained allegations that he possessed a concealable firearm (§ 29610) and committed vandalism (§ 594).  He contends there was insufficient evidence he committed these crimes.  We agree, and reverse.

FACTUAL AND PROCEDURAL HISTORY

*The murder of E.L.*

I.A. and five of his friends—Aviyance Burke, Semaj Cathey, R.G., Donovan Kushner, and Dreshad Populus—were members of a Los Angeles criminal street gang.  In June 2017, the six were driving through rival gang territory.  I.A., Burke, and Populus were in a Chevrolet; Cathey, R.G., and Kushner were in an Infiniti directly ahead of them.  The Infiniti stopped, and Kushner got out and shot a man crossing the street.  The man, later identified as E.L., died at the scene.

Investigators found five spent cartridge casings and a bullet fragment near E.L.'s body, all of which had been fired from the same nine-millimeter handgun.  Police later searched Cathey's house and found a nine-millimeter handgun.  They also

2

found several cartridges and cartridge casings with the same head stamp as the cartridges found at the crime scene. I.A.'s fingerprints and DNA were not on the gun or on any of the cartridges or cartridge casings.

Prosecutors alleged that I.A. committed murder (§ 187, subd. (a)) and conspired to commit murder (§ 182, subd. (a)(1)) in a Welfare and Institutions Code section 602 petition. They also alleged that I.A. committed his crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), and that a principal personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm causing death during the commission of the crimes (§ 12022.53, subds. (b), (c), (d) & (e)(1)). They filed similar charges against I.A.'s alleged accomplices.

*Jailhouse conversations*

While awaiting trial on the charges, Cathey was put in a cell with an undercover informant. Cathey told the informant that I.A. was "one of the homies." When the informant said that police had arrested I.A., Cathey "wonder[ed] what they got him for." He said that he did not know why police would arrest or even want to talk to I.A. since they had found the gun used to shoot E.L. at Cathey's house.

Police later put Kushner in a cell with the informant. Kushner admitted that he was in the Infiniti with Cathey and R.G. on the day of E.L.'s murder. "We was tagging at first and shit," he said, "and then we end up . . . seein' somebody." Thinking the person was a rival gang member, Kushner got out of the Infiniti and used a nine-millimeter handgun to shoot him. After the shooting Kushner gave the gun to Cathey. Kushner did

not mention that I.A. or anyone else in the Chevrolet was involved in E.L.'s murder.

I.A. and R.G. were housed together in another cell. During one conversation police recorded, R.G. said that he "just told [police] that we was taggin' . . . ." I.A. asked, "They already know that?" R.G. replied that they did. I.A. then asked if R.G. told police that I.A. had been tagging. R.G. said, "They know you was there, bro."

In another recorded conversation, R.G. told I.A. that police "said they gon' get our fingerprint, everybody fingerprints, they say they gon' fingerprint that gun." But I.A. had nothing to worry about because "[he] ain't touch that gun—" I.A. disagreed: "[E]verybody touched that gun. . . . Everybody touched that gun."

*Facebook photograph and messages*

At the contested adjudication, prosecutors introduced into evidence a picture of I.A. holding what appears to be an assault rifle. They also introduced several Facebook messages he sent or received in the months surrounding E.L.'s murder. In January 2017, for example, I.A. wrote, "I'm tryin to get me a gun." A few days later he wrote, "Why would I get a 38 nigga got that all ready[?]" and "UK no some body that sale a thang[?]"

In February, I.A. sent a message to Cathey: "I got to go home NK get my thang." Cathey responded, "Ight u got one now[.] . . . What kind[?]" I.A. replied, "Yea 38."

The following week, Cathey sent I.A. a message asking, "Who got another one for the low[?]" I.A. replied, "They don't got nun for the low." Cathey asked, "How u pay for urs[?]" I.A. said, "300 but that because I was trying to get my shit to fast."

4

In April, I.A. sent a message to "Nifty Bkang" that said, "Uk got a thAng 4k sale[?]"  Later that month he told Bkang, "We need some thangs."  Bkang responded, "UK got yo 38k."  I.A. replied, "Mank that its."

A few days after E.L.'s murder in June, Cathey told I.A. that a person named "T.K." was "trippin out" because Kushner used T.K.'s handgun to shoot E.L.  T.K. wanted Kushner and his accomplices to purchase the gun.

Later that day I.A. sent a message to "Laura Lenay."  The message read, "Sis my gun at yo Moma."  Lenay asked, "That's the one he be having right?"  I.A. replied, "Yea."  Lenay said, "The police found it. . . . She didn't have enough time . . . [t]o hide it right."

*Juvenile court findings and subsequent proceedings*

At the conclusion of adjudicatory proceedings in October 2018, the juvenile court sustained the allegation that I.A. committed murder, and deemed the murder to be second degree (§ 189, now-subd. (c)).  I.A.'s counsel asked the court for clarification:  "So you sustained the petition under a natural and probable consequences theory with the targeted [offenses] you mentioned, the tagging . . . and transfer of gun[,] and [you found that] there's insufficient evidence . . . under the first degree murder theory; is that correct?"  The court said that it was.  It then found true the gang and firearm allegations attached to the murder, but found not true the allegation that I.A. conspired to commit murder.

At the January 2019 disposition hearing, I.A. moved for a new adjudication pursuant to Senate Bill No. 1437 (S.B. 1437), which amended "the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is

5

not imposed on a person who [was] not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The juvenile court denied I.A.'s motion, concluding that he had to file a section 1170.95 petition if he wanted the true finding on the murder allegation set aside. (*In re R.G.*, *supra*, 35 Cal.App.5th at pp. 145-151.) It declared him a ward of the court, and ordered him committed to the Division of Juvenile Justice (DJJ) for a maximum term of 40 years to life.

I.A. filed the requisite petition, and the juvenile court determined that he made a prima facie showing he was entitled to relief. Over prosecutors' objections, the court granted I.A.'s petition the following month. Prosecutors then urged the court to redesignate its true finding on the murder allegation as findings that I.A. possessed a concealable firearm (based on the theory that he constructively possessed the gun Kushner used to shoot E.L.) and committed vandalism, and that he committed those crimes for the benefit of a criminal street gang. I.A. argued the evidence did not support these allegations, but the court disagreed. It made the requested redesignations, deemed the offenses felonies, and declared I.A. a ward of the court. It ordered a camp community placement for six years eight months.

## DISCUSSION

### *I.A.'s contentions are cognizable on appeal*

Before we turn to I.A.'s insufficiency-of-the-evidence contentions, we first consider the Attorney General's arguments that they are not cognizable on appeal. The Attorney General argues: (1) the doctrine of invited error prevents consideration of I.A.'s contentions, (2) I.A. forfeited his contentions because he did

not object to the court's redesignation of its murder finding, and (3) permitting I.A. to raise his contentions on appeal conflicts with the legislative intent underlying section 1170.95.  None of these arguments is persuasive.

### 1.  Invited error

"'The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the . . . court at [their] behest.'"  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.)  The Attorney General claims this doctrine bars consideration of I.A.'s sufficiency-of-the-evidence contentions because "the resentencing outcome [he] obtained was the result of his own affirmative legal action":  the filing of a section 1170.95 petition.  This claim misconstrues what occurred in the proceedings below.

In his petition, I.A. simply requested that the juvenile court vacate its murder finding.  He did not request redesignation of that finding to findings on firearm possession and vandalism, as the Attorney General implies.  The court made those findings of its own volition, based on its view of the evidence produced at the contested adjudication.  And I.A. challenged those findings as unsupported by the evidence.  Any error with those findings thus cannot be attributed to him.  The doctrine of invited error is inapplicable.  (*Lambert v. General Motors* (1998) 67 Cal.App.4th 1179, 1183 [doctrine inapplicable if defendant neither creates nor foresees error].)

Moreover, applying the doctrine of invited error to a situation like this one would require a minor to either:  (1) refrain from filing a section 1170.95 petition and accept a murder finding based on a now-invalid theory, or (2) have their murder finding

7

redesignated but lose the ability to challenge that redesignation on appeal. Either choice raises serious constitutional concerns.

As to the former, due process requires a prosecutor to "'convince [the juvenile court] beyond a reasonable doubt of the existence of *every element of the offense*'" alleged against a minor. (*In re Miguel L.* (1982) 32 Cal.3d 100, 105, italics added, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 316.) Malice aforethought is one element of murder. (§ 187, subd. (a).) But since the Legislature passed S.B. 1437, "malice can no longer 'be imputed to a [minor] based solely on [their] participation in a crime.' [Citation.]" (*In re R.G., supra,* 35 Cal.App.5th at p. 144; see § 188, subd. (a)(3).) A finding that a minor committed murder based on a natural and probable consequences theory thus does not guarantee that the prosecutor proved beyond a reasonable doubt that the minor acted with malice, as due process requires.

A separate due process violation would occur if a murder finding is redesignated but the minor cannot challenge the redesignated offense. A minor deemed a ward of the juvenile court has a statutory right to appeal. (*In re Kevin S.* (2003) 113 Cal.App.4th 97, 106-107; see Welf. & Inst. Code, § 800, subd. (a).) That "'statutory appeal procedure must be administered fairly to all persons'" (*Kevin S.*, at p. 115), and must provide the minor with "full and effective appellate review" (*id*. at p. 117). Full and effective appellate review includes ensuring that any sustained allegations were proven beyond a reasonable doubt at adjudication (*In re Winship* (1970) 397 U.S. 358, 368), and are supported by substantial evidence on appeal (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371). Were we to conclude that a minor cannot challenge the sufficiency of the evidence of redesignated target offenses, we would be denying the minor of

8

those due process rights.  Indeed, were we to accept the Attorney General's position, the court below could have redesignated its finding that I.A. committed murder as a finding that he committed a burglary—a crime for which there is no support in the record—and he would be unable to do anything about it. That is not the law.

The Attorney General's attempts to avoid these constitutional concerns are unavailing.  He first claims that, instead of pursuing his section 1170.95 petition with the juvenile court, I.A. could have appealed the denial of his motion for a new adjudication and then requested S.B. 1437 relief directly on appeal.  But such a request would have lacked merit:  S.B. 1437 does not apply retroactively on direct appeal.  (*In re R.G.*, *supra*, 35 Cal.App.5th at pp. 145-146; see *People v. Martinez* (2019) 31 Cal.App.5th 719, 722-729.)  A minor is not required to pursue unmeritorious requests.  (See *People v. McPeters* (1992) 2 Cal.4th 1148, 1173, superseded by statute on an unrelated point as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106-1107.)

Acknowledging that S.B. 1437 relief would not have been granted on appeal, the Attorney General claims I.A. could have appealed the denial of his motion for a new adjudication and then filed a section 1170.95 petition in the juvenile court after appellate proceedings concluded.  But this claim ignores the prejudice I.A. would have suffered in the interim.  I.A. would have spent months—perhaps years—in DJJ custody while courts considered his appeal and subsequent petition.  Postponing consideration of a challenge only to have a minor languish in the "most restrictive placement" for a juvenile ward is patently untenable.  (*In re Eddie M.* (2003) 31 Cal.4th 480, 488.)

9

### 2. *Forfeiture*

Alternatively, the Attorney General argues I.A. forfeited his sufficiency-of-the-evidence contentions because he did not object to the juvenile court's redesignation of its murder finding. (See *People v. Saunders* (1993) 5 Cal.4th 580, 589-590 [contention forfeited without timely, specific objection].) The Attorney General again misconstrues the proceedings below.

Though I.A. petitioned the court to vacate its murder finding, he did not request that it redesignate that finding as a finding on specific target offenses. And when prosecutors urged the court to redesignate its finding as findings that he possessed a concealed firearm and committed vandalism, I.A. objected and asserted there was insufficient evidence he committed those crimes. This case is thus unlike those in which a defendant forfeited their challenge because they consented to being convicted of a specific lesser offense. (See *People v. Delgado* (1989) 210 Cal.App.3d 458, 461 [compiling cases].) There was no forfeiture here. (*Id.* at pp. 464-465 [challenge to conviction of lesser offense permissible where defendant maintained his innocence through trial]; see also *In re Alberto S.* (1991) 226 Cal.App.3d 1459, 1465 [same]; *People v. Delahoussaye* (1989) 213 Cal.App.3d 1, 113 [challenge permitted where court implied it could convict defendant of lesser offense].)

We would reach the same conclusion even if I.A. had not objected to the redesignated offenses. No objection is necessary to preserve a challenge to the sufficiency of the evidence for appeal. (See, e.g., *People v. McCullough* (2013) 56 Cal.4th 589, 596; *People v. Butler* (2003) 31 Cal.4th 1119, 1126; *People v. Rodriguez* (1998) 17 Cal.4th 253, 262.) This is true even if the appellate challenge is to a lesser offense than the one

originally charged.  (See, e.g., *People v. Tully* (2012) 54 Cal.4th 952 [challenge to burglary underlying first degree murder]; *People v. Long* (1940) 15 Cal.2d 590 [challenge to manslaughter as lesser included offense of murder]; *People v. McCloud* (2012) 211 Cal.App.4th 788 [challenge to assaults as lesser included offenses of attempted murder].)  A minor's "failure to object to a court's [true] finding [on] a lesser related offense after the decision is announced does not support a reasonable inference of consent to [a finding on] the offense."  (*In re Alberto S.*, *supra*, 226 Cal.App.3d at p. 1465.)

### 3.  *Legislative intent*

Finally, the Attorney General argues I.A. cannot raise his sufficiency-of-the-evidence contentions on appeal because permitting him to do so would conflict with the legislative intent underlying section 1170.95.  (Cf. *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 [S.B. 1437 is "an act of lenity"].)  In the Attorney General's view, it would be absurd to permit I.A. to obtain leniency pursuant to section 1170.95 and then allow him to contend the mechanism for granting that leniency itself constitutes error.  But that is not what I.A. contends.

I.A. requested that the juvenile court vacate its murder finding pursuant to section 1170.95.  He does not now contend the court employed the wrong "mechanism" when it granted that request; he contends the court erred when it identified the target offenses.  In other words, his challenge is not to the *process* of redesignation but to its *results*.  We thus have no occasion to consider the Attorney General's legislative intent argument.  (*Kinney v. Clark* (2017) 12 Cal.App.5th 724, 734 [refusing to consider argument not germane to the case].)

11

### *4. Conclusion*

In conclusion, where a juvenile court vacates its true finding on a generic murder allegation and redesignates it as a finding on an uncharged target offense, and does so before a minor has had the opportunity to contest the court's findings or orders, the minor may challenge the sufficiency of the evidence of the redesignated offense on appeal. Section 1170.95 does not force a minor to choose between accepting a murder finding and a loss of appellate rights. (Cf. § 1170.95, subd. (f) ["[t]his section does not diminish or abrogate any rights or remedies otherwise available to" a minor].) Such a choice is "no choice, except a choice between the rock and the whirlpool[]—an option to [forgo] a privilege [that] may be vital to [one's] livelihood or submit to a requirement [that] may constitute an intolerable burden." (*Frost & Frost Trucking Co. v. Railroad Commission of California* (1926) 271 U.S. 583, 593.) We thus turn to I.A.'s sufficiency-of-the-evidence contentions.

### *Sufficiency of the evidence*

I.A. contends insufficient evidence supports the juvenile court's findings that he possessed a concealable firearm and committed vandalism. We agree.

### *1. Standard of review*

We review I.A.'s contentions using the same standard of review that applies in adult criminal cases. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) Specifically, we determine whether substantial evidence—"evidence that is reasonable, credible, and of solid value"—supports the juvenile court's findings. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).) We view the evidence "in the light most favorable to the prosecution and presume in support of the [findings] the existence of every fact

12

the [court] could reasonably have deduced from the evidence."
(*Ibid*.)  We "accept [all] logical inferences that the [court] might have drawn from the . . . evidence" (*People v. Maury* (2003) 30 Cal.4th 342, 396), but reject inferences "'based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work'" (*People v. Morris* (1988) 46 Cal.3d 1, 21 (*Morris*), disapproved on another point by *In re Sassounian* (1995) 9 Cal.5th 535, 543, fn. 5).  We will reverse only if "'it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the [court's findings]." (*Zamudio*, at p. 357.)

### 2. *Possession of a concealable firearm*

A minor possesses a concealable firearm if they "'"have actual control, care, and management of"'" the weapon. (*People v. Martin* (2001) 25 Cal.4th 1180, 1186.)  That possession may be actual or constructive. (*People v. McKinnon* (2011) 52 Cal.4th 610, 687.)  It is "actual" if "'"the weapon is in [the minor's] immediate possession or control,'" i.e., [if the minor] is actually holding or touching it.  [Citations.]" (*People v. Bay* (2019) 40 Cal.App.5th 126, 132 (*Bay*).)  It is "constructive" if the minor "'knowingly exercise[s] a right to control the [firearm], either directly or through another person.'  [Citation.]" (*Ibid*.)

"'"[U]pon no hypothesis whatever is there sufficient substantial evidence to support"'" the juvenile court's finding that I.A. possessed a concealable firearm. (*Zamudio, supra*, 43 Cal.4th at p. 357.)  Prosecutors' theory of the case was that I.A. constructively possessed the gun Kushner used to shoot E.L.  But the only evidence tying I.A. to that gun was that he:  (1) once touched it, (2) was in the Chevrolet following the Infiniti from which Kushner emerged when it was used, and (3) knew that Kushner had the gun when Kushner used it against E.L.  "'[M]ere

13

proximity' or opportunity to access [a gun], 'standing alone, is not sufficient evidence of possession.' [Citations.]" (*Bay*, *supra*, 40 Cal.App.5th at p. 132.) Nor is knowledge of a gun's presence. (*In re Jorge M.* (2000) 23 Cal.4th 866, 878.) What is required, and what prosecutors failed to show here, is that I.A. exercised dominion and control over the gun. (*Ibid*.)

The Attorney General counters that "[i]n the months preceding the murder, [I.A.'s] Facebook account [was] replete with messages regarding his desire to purchase, and his acquisition of, a gun," and that his Facebook profile showed a picture of him holding an assault rifle. But even if we assume that I.A. did, in fact, acquire a gun, prosecutors presented no evidence that the gun I.A. acquired was the one used to shoot E.L. The evidence was to the contrary: I.A. referenced a .38-caliber weapon in his messages and held a rifle in his picture, but a nine-millimeter handgun—purportedly owned by "T.K."—was used to kill E.L. Without proof that I.A. exercised dominion and control over *that* gun, the juvenile court's finding that he possessed a firearm was based on little more than "'speculation, supposition, surmise, conjecture, or guess work.'" (*Morris*, *supra*, 46 Cal.3d at p. 21.) Reversal is required. (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1419-1420 [no possession where prosecutors showed only "possibility" that defendant "might have had the right to exercise control over" fellow gang member's weapon], disapproved on another point by *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6.)

### 3. *Vandalism*

We reach the same conclusion with respect to the vandalism finding. A minor commits vandalism if they maliciously damage, destroy, or deface with graffiti any real or

14

personal property that is not their own.  (§ 594, subd. (a).)  To uphold the finding that I.A. committed this crime, "there must be sufficient proof that the crime actually occurred and that [I.A.] was the perpetrator."  (*In re D.A.* (2018) 24 Cal.App.5th 768, 770.)  "The first of these elements—the corpus delicti—must be established 'independently from [I.A.'s] extrajudicial statements, confessions, or admissions.'  [Citation.]"  (*Ibid*.)  It must also be established "independently of and without considering the extrajudicial statements of" I.A.'s accomplices.  (*Jones v. Superior Court* (1979) 96 Cal.App.3d 390, 397 (*Jones*).)

Here, the Attorney General claims I.A.'s statements to R.G. constitute adoptive admissions, and were thus admissible—and sufficient—to prove he committed vandalism.  (See Evid. Code, § 1221.)  But even if the statements were admissions, they do not, by themselves, establish that any vandalism actually occurred.  (*In re D.A.*, *supra*, 24 Cal.App.5th at p. 770.)  Nor do the statements of R.G. and Kushner regarding "tagging."  (*Jones*, *supra*, 96 Cal.App.3d at p. 397.)  Because the Attorney General cites no other evidence to support the juvenile court's vandalism finding, there is insufficient proof of the corpus delicti of that offense.  The finding must be reversed.

15

## DISPOSITION

The juvenile court's findings that I.A. possessed a concealable firearm and committed vandalism are reversed, and the corresponding gang allegations are vacated.  The court is directed to vacate the jurisdiction and disposition order entered February 6, 2019, and to dismiss the Welfare and Institutions Code section 602 petition filed August 11, 2017.

<u>CERTIFIED FOR PUBLICATION.</u>


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

16

Christopher J. Smith, Judge

Superior Court County of Los Angeles

_____

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.